**OFFICE OF THE FEDERAL PUBLIC DEFENDER**
**DISTRICT OF MARYLAND**
NORTHERN DIVISION
TOWER II, 9TH FLOOR
100 SOUTH CHARLES STREET
BALTIMORE, MARYLAND 21201-2705
TEL:  (410) 962-3962
FAX:  (410) 962-3976
TOLL FREE: (855) 213-8450

JAMES WYDA
FEDERAL PUBLIC DEFENDER

JESSICA SAWADOGO
ASSISTANT FEDERAL PUBLIC DEFENDER

February 25, 2026

The Hon. Brendan A. Hurson
United States District Judge
District of Maryland
101 West Lombard Street
Baltimore, MD  21201

> Re:    *United States v. Beautiful Life Allah*
>        Crim. No. BAH-24-354

Dear Judge Hurson:

Beautiful Life Allah is scheduled to appear before the Court for a guilty plea hearing and sentencing hearing on March 4, 2026. At the hearing, Mr. Allah will plead guilty to Counts Two, Three, and Six of the Indictment, charging him with passport fraud in violation of 18 U.S.C. § 1542, aggravated identity theft in violation of 18 U.S.C. § 1028A(a)(1), and false representation of a social security number in violation of 42 U.S.C. § 408(a)(7)(B). Pursuant to the parties' plea agreement, the Defense and the Government are jointly recommending a total sentence of 36 months' imprisonment. The first 12 months for Counts Two and Six are to run concurrent with each other and concurrent with Mr. Allah's state sentence in Baltimore County Case No. C-03-CR-24-002025. The net effect of the parties' agreed-upon sentence will be 2 years of imprisonment consecutive to that state sentence.

For the reasons provided below, Mr. Allah respectfully requests that the Court accept the plea agreement and impose the agreed-upon sentence. Mr. Allah also respectfully requests that the Court rejects two recommended conditions of supervised release, both relating to financial disclosure and access requirements, on the grounds that they are not reasonably related to his offense conduct.

**I.      A total sentence of 36 months (with the first 12 months for Counts Two and Six to run concurrent with each other and concurrent with Mr. Allah's state sentence) is sufficient but not greater than necessary to comply with the purposes of sentencing.**

Mr. Allah will plead guilty to Counts Two, Three, and Six of the Indictment, charging him with passport fraud, aggravated identity theft, and false representation of a social security number. The parties agree that the sentencing guidelines range is 15 to 21 months for Counts Two and Six (corresponding to final offense level 12 and CHC III), and 24 months consecutive for Count Three. For the reasons explained below, the agreed-upon sentence is sufficient but not greater than necessary to comply with the purposes of sentencing under § 3553(a).

The Hon. Brendan A. Hurson
*United States v. Beautiful Life Allah*, Crim. No. BAH-24-354
February 25, 2026
Page 2

*First*, a sentence of 36 months that is partially concurrent with Mr. Allah's state sentence is appropriate because the offense conduct in this case is related in part to the offense conduct underlying Mr. Allah's state sentence. Mr. Allah is currently serving time for assaulting the mother of Victim #2. At the root of the friction between Mr. Allah and Victim #2's mother was both parties' desire to have custody of Victim #2. Mr. Allah obtaining a passport using a fraudulent custody order (part of what he is pleading guilty to here) was tied to his years of fighting with Victim #2's mother, which ultimately culminated in his assault conviction. Given the relationship between the two offenses (*i.e.*, a contentious relationship between two adults, including over custody of their son), a sentence that includes partially concurrent time recognizes that Mr. Allah is already being punished for his actions related to Victim #2's mother.

*Second*, Mr. Allah's advanced age mitigates in favor of a sentence that results in 2 years of consecutive prison time and no more. Mr. Allah is currently 66 years old and will be a few days shy of 70 years old by the time he completes his state sentence. His anticipated release date per the Maryland Department of Public Safety and Correctional Services is January 14, 2030. At 70-years-old, Mr. Allah will transition into the BOP. Given his age, this time will be particularly punishing. Elderly inmates are some of the most vulnerable populations in prison, and the BOP has a documented inability to care for aging inmates due to factors such as limited staff and training. *See* OIG DOJ, *The Impact of an Aging Inmate Population on the Federal Bureau of Prisons* (Feb. 2016), *available at* https://oig.justice.gov/sites/default/files/reports/15-05.pdf (finding that (1) BOP institutions lack appropriate staffing levels to address needs of elder inmate population and provide limited training to do so; (2) physical infrastructure of BOP institutions cannot adequately house aging inmates; and (3) BOP does not provide programming opportunities specifically addressing the needs of aging inmates).

*Third*, Mr. Allah accepts responsibility for his conduct and makes no excuses for his criminal conduct. However, it bears noting that a sentence that results in a sentence of only two years of consecutive prison time is appropriate given the relative severity of Mr. Allah's offense conduct, particularly as compared to other aggravated identity theft cases. Here, Mr. Allah's actions did not result in any financial harm to Victim #1 or Victim #2. In the case of Victim #1, Mr. Allah never obtained a passport in the victim's name, and in the case of Victim #2, Mr. Allah never used that passport for any nefarious purpose. Many aggravated identity theft cases involve conduct where a victim is financially harmed, their credit is ruined, and/or they are forced to spend significant time trying to recoup their losses. No such outcomes occurred here. Indeed, the lack of financial harm, especially when compared to many other aggravated identity theft cases, justifies a sentence total sentence of 36 months, with 12 months of concurrent time and 24 months of consecutive time.

## II.    Mr. Allah objects to Recommended Conditions of Supervision #1 and #3 in his Presentence Report.

Under 18 U.S.C. § 3583(d), special conditions of supervised release must be "(1) reasonably related to the nature and circumstances of the offense, the history and characteristics of the defendant, and the statutory goals of deterrence, protection of the public, and rehabilitation; (2) no greater a deprivation of liberty than is reasonably necessary to achieve those

The Hon. Brendan A. Hurson
*United States v. Beautiful Life Allah*, Crim. No. BAH-24-354
February 25, 2026
Page 3

statutory goals; and (3) consistent with any relevant policy statements issued by the Sentencing Commission." *United States v. Ellis*, 112 F.4th 240, 252 (4th Cir. 2024) (internal quotation marks and brackets omitted). Mr. Allah objects to Recommended Conditions #1 and #3 because the facts of his case do not support implementing financial disclosure and access requirements.

Recommended Condition #1 would require Mr. Allah to provide Probation with access to any requested financial information and authorize the release of any financial information and allow Probation to share financial information with the United States Attorney's Office. This condition is not reasonably related to the offense or Mr. Allah's criminal history, and imposing it would result in a significant deprivation of liberty. Mr. Allah's case involved fraud and false statements, but it did not involve *financial* fraud. Mr. Allah did not steal money from the victims. He did not access their bank accounts. His offense conduct did not involve wire fraud, making bank transfers, or anything that would be addressed or prevented by implementing this condition. Moreover, Mr. Allah's history and circumstances do not support the imposition of this condition: he has never been convicted of a financial crime. For these reasons, the Court should not impose it. *E.g.*, *United States v. McAdam*, 165 F.4th 688, 697–98 (2d Cir. 2026) (rejecting imposition of financial requirement where not supported by offense or personal history of defendant).

Recommended Condition #3 would prohibit Mr. Allah from incurring new credit charges or opening additional lines of credit without the approval of Probation. This condition is not reasonably related to the offense or Mr. Allah's criminal history, and imposing it would result in a significant deprivation of liberty. The facts of Mr. Allah's case do not involve credit card fraud or misuse. Indeed, his Presentence Report noted that his Equifax credit report revealed no balances in his name. Again, the requirements of this condition have no relationship to the offense conduct in Mr. Allah's case or to his criminal history. Further problematic, this condition is overbroad. *E.g.*, *United States v. Castellano*, 60 F.4th 217, 225–26 (4th Cir. 2023) (rejecting special condition where terms were overbroad and not supported by individualized evidence). Read literally, this condition would prohibit Mr. Allah from using a credit card for even basic necessities, such as purchasing groceries or buying gas, without first obtaining prior approval. If imposed, Mr. Allah would be in violation of this condition if he purchased something as cheap as a pack of gum with a credit card without obtaining prior approval. This condition would lead to greater deprivation of liberty than is reasonably necessary to achieve the goals of sentencing.

Respectfully,

_____/s/_____
Jessica Sawadogo
Assistant Federal Public Defender
Office of the Federal Public Defender
Email: jessica_sawadogo@fd.org
Phone: (410) 962-3962

Cc: Kertisha Dixon, AUSA
    Nicole Wonneman, USPO